UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNETH LEHMAN,

    Plaintiff,

v.                            Case No:  2:15-cv-138-FtM-38DNF

CHASE BANK USA, N.A.,

    Defendant.
_____/

## **ORDER**[1]

This matter comes before the Court on Defendant's Motion to Dismiss (Doc. #9) filed on March 30, 2015.  Plaintiff filed a Response in Opposition on April 15, 2015.  (Doc. #17).  The matter is now ripe for review.

## **Background**

Plaintiff is a disgruntled debtor.  (Doc. #2 at 2).  Defendant is a lender and national bank based in Wilmington, Delaware.  (Doc. #2 at 1).  In early July 2011, Plaintiff visited a dentist office to have some dental work completed.  (Doc. #2 at 2).  When it came time to pay, Plaintiff elected to finance the $6425 worth of service charges through Defendant. (Doc. #2 at 2).  Soon after, however, Plaintiff realized that the dentist office erred in describing the terms of the loan.  (Doc. #2 at 2-3).  So Plaintiff brought this error to the dentist office's attention, and the loan was refunded in full, "effectively closing the . . .

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

account." (Doc. #2 at 3). Yet Plaintiff immediately entered into a separate financing agreement with Defendant for the same amount as the original loan. (Doc. #2 at 3). This second loan is the subject of the instant action.

Plaintiff's troubles began when the billing statements for the second loan arrived containing errors. (Doc. #2 at 5-7). Primarily, it appeared that Defendant confused Plaintiff's original loan with his second loan, leading to late fees and increased interest rates. (Doc. #2 at 5-7). Plaintiff also had trouble with Defendant's customer service, resulting in returned check fees on his bank checking account. (Doc. #2 at 5-7). Eventually, Defendant corrected all of its errors – reversing the interest rate increase and refunding the returned check and late fees. (Doc. #2 at 7-10). While these difficulties frustrated Plaintiff, they are not the basis of this action. Instead, Plaintiff bases this action upon two subsequent acts of Defendant – an additional interest rate increase and a transfer of the outstanding principal from a loan account to a credit card account.

The first of these acts occurred on January 1, 2012, when Plaintiff's billing statement, and all the subsequent billing statements, reflected that his promotional interest rate period would end on September 5, 2013 – resulting in an increase of his annual percentage rate from 14.99% to 27.99%. (Doc. #2 at 10). This disturbed Plaintiff because just one month prior, on December 1, 2011, Defendant had mailed him a letter confirming that it had corrected its first improper interest rate increase. (Doc. #2 at 10). But, as Plaintiff explains, the December 1, 2011 letter was simply "untruthful and misleading" because Defendant did not intend to reinstate the correct interest rate for the entire promotional period, and instead chose this new "arbitrary" date of September 5, 2013. (Doc. #2 at 10-11). Thereafter, on December 4, 2013, Defendant followed through

with its planned promotional period interest rate termination, increasing Plaintiff's interest rate to 27.99%.  (Doc. #2 at 17).

The second act occurred on October 4, 2013, when Defendant "arbitrarily assigned" Plaintiff "a new, but closed, credit card account," despite the fact that he never submitted an application or signed a cardholder agreement for this new account.  (Doc. #2 at 14).  This, in Plaintiff's view, was unfair because it meant that Defendant closed his loan account, "an existing current account," and transferred the balance of the loan account to a closed credit card account.  (Doc. #2 at 15).  In other words, unlike his loan account, where he had credit available, Plaintiff had no access to any credit under the new closed credit card account – he could only access the account to submit payments on the outstanding principal.   Notably, Defendant executed this transfer without any notice to Plaintiff.  (Doc. #2 at 15).

Based on these acts, Plaintiff filed the instant action asserting eight counts: Breach of Contract (Count 1); Breach of Contract (Count 2); Breach of Contract (Count 3); Fraud (Count 4); Violation of the Truth in Lending Act (Count 5); Violation of Regulation Z, 12 C.F.R. § 226 (Count 6); Violation of the Delaware Banking Act (Count 7); and Unlawful Practice Consumer Fraud (Count 8).  (Doc. #2 at 22-44).  Now, Defendant seeks to dismiss Plaintiff's Complaint.  (Doc. #9).

## Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed.  *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004).  The Court must accept all factual allegations in a plaintiff's complaint as

3

true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott,* 610 F.3d 701, 708, n. 2 (11th Cir. 2010). A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Marsh,* 268 F.3d at 1036 n. 16. Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

Because Plaintiff is proceeding *pro se*, the Court construes his complaint more liberally than had it been drafted by an attorney. See *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990).

**Discussion**

A.  *Plaintiff's Federal Law Claims*

Defendant seeks to dismiss Plaintiff's Complaint for a variety of reasons.  (Doc. #9 at 11-25).  Among them, Defendant avers that Count 5 and Count 6, alleging violations of the Truth in Lending Act and Regulation Z, respectively, are barred by the applicable statute of limitations.  (Doc. #9 at 17-18).  Plaintiff failed to respond to this exact argument.  (Doc. #17).  Because this argument, if successful, has implications for the Court's jurisdiction over the remainder of the action, the Court will address it first.

Congress enacted the Truth in Lending Act ("the Act") "to assure a meaningful disclosure of credit terms" and "to protect [] consumer[s] against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).  To implement the Act, Congress granted the Federal Reserve Board ("the Board") the power to create regulations.  Utilizing this power, the Board created Regulation Z, 12 C.F.R. § 226.1 *et seq.*, the Act's implementing regulations.  Together, the Act and Regulation Z require that creditors make certain disclosures – i.e., the applicable interest rate – "clearly and conspicuously" to debtors before opening an account.  15 U.S.C. § 1637(a); 12 C.F.R. § 226.6.  If there is a "significant change" in the account's terms later, the creditor must provide a written notice of the change at least 45 days prior to its implementation.  15 U.S.C. § 1637(i)(1); 12 C.F.R. § 226.9(c)(2)(i)(A).  Failure to adhere to these disclosure requirements makes the creditors liable to the debtors for various damages.  15 U.S.C. § 1640(a)(1)-(4).  Notably, debtors must bring actions asserting violations of the Act or Regulation Z within one year from the date the violation occurs.  15 U.S.C. § 1640(e).

As the basis for Count 5 (Violation of Truth in Lending Act) and Count 6 (Violation of Regulation Z), Plaintiff focuses on Defendant's two subsequent acts described above. (Doc. #2 at 33-37).  To that end, Plaintiff believes that both transferring the second loan's principal to a closed credit card account and raising his interest rate in December 2013 constituted a "significant change" in the account.  (Doc. #2 at 33-37) as a result, required Defendant to provide 45-days' notice.  (Doc. #2 at 33-37).  But Defendant failed to do so, violating both the Act and Regulation Z.  (Doc. #2 at 33-37).  In response, Defendant asserts that these alleged violations, even if true, are time-barred by the applicable one-year statute of limitations.  (Doc. #9 at 17-18).  The Court agrees.

With regard to the interest rate violation allegation, Defendant focuses on the fact that, beginning in December 2011, it started sending Plaintiff billing statements that reflected that his interest rate would rise to 27.99% in the future.  So, from Defendant's perspective, the statute of limitations began to run when Plaintiff was first alerted that his interest rate would rise.  The Court disagrees.  It is undisputed that the billing statements reflected that Plaintiff's interest rate would rise in the future.  But when Plaintiff received those billing statements, no (alleged) violation had occurred yet. His interest rate remained at 14.99%.  Yet in December 2013, Plaintiff's fears came true – Defendant increased his interest rate to 27.99%.  It is at this point therefore that Plaintiff became aware of the alleged violation.  Having become aware of the alleged violation in December 2013, Plaintiff had until December 2014 to bring an action against Defendant.  Instead of meeting this one-year deadline, Plaintiff waited until February 2015 to do so.  Unfortunately for Plaintiff, that was two months too late.  Thus, the interest rate increase allegation, even if true, is barred by the Act and Regulation Z's statute of limitations.

Moreover, Plaintiff's allegation of an improper account transfer fairs no better. Plaintiff alleges that in October 2013, Defendant executed an improper account transfer, shifting the principal owed from an open loan account to a closed credit card account without providing notice. It follows that Plaintiff became aware of this improper transfer, at the latest, in October 2013 when the transfer occurred. And, as a result, under the Act and Regulation Z's one-year statute of limitations, Plaintiff had until October 2014 to bring an action against Defendant. Yet, as explained above, Plaintiff failed to meet this deadline. Instead, Plaintiff brought the instant action in February 2015 – a few months too late. Thus, the account transfer allegation, even if true, is barred by the Act and Regulation Z's one-year statute of limitations.

Based on the foregoing, the Court grants Defendant's Motion to Dismiss Counts 5 and 6 with prejudice. [2]

### B. *Plaintiff's State Law Claims*

It is well established that district courts may decline to exercise supplemental jurisdiction over state law claims when the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c). Here, the Court has dismissed Counts 5 and 6 – the only claims that it had original jurisdiction over. With that being the case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1328 (11th Cir. 2010) (explaining that district courts enjoy broad discretion in declining to exercise supplemental jurisdiction under § 1367(c)). Consequently, the Court must deny the remainder of Defendant's Motion to Dismiss as moot.

---

[2] Plaintiff fails to present any facts or argument, and the Court is aware of none, illustrating that the statute of limitations should be tolled.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. #9) as to Count 5 and Count 6 is **GRANTED with prejudice**.

2. Defendant's Motion to Dismiss (Doc. #9) as to the remaining Counts is **DENIED as moot**.

3. The Clerk of Court is directed to **REMAND** the case to the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, and to transmit a certified copy of this Order to the Clerk of that Court.

4. The Clerk of the Court is further directed to terminate all pending motions and deadlines, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida, this 13th day of May, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record